### WESNER v. WOODSON et al.

No. 3223.

Court of Civil Appeals of Texas.
Beaumont.

Dec. 16, 1937.

Rehearing Denied Dec. 22, 1937.

Kirby Fitzpatrick, of Houston, for plaintiff in error.

Vinson, Elkins, Weems & Francis, of Houston, for defendant in error.

WALKER, Chief Justice.

This appeal is by writ of error but the parties will be referred to as appellant and appellees.

On the 4th day of December, 1932, A. R. Woodson filed his application, in the county court of Montgomery county, to be appointed temporary guardian of the estate of Louise Wesner, who, on that date, was a minor living in an orphan's home in the state of Arkansas; on the date he filed his application he was appointed temporary guardian, the appointment directing that notice issue, and it also contained the other statutory requirements of a temporary appointment. On the day after his appointment Woodson, as temporary guardian, made application to sell 15 acres of land in Montgomery county, described as belonging to the estate of the minor, on an agreed price of $500 to be paid in cash, and $7,500 to be paid from oil if and when it was produced from the land; on the date of the application the 15 acres of land was within the Conroe oil field, but was not proven oil territory. On the 27th day of December, notice issued on Woodson's temporary appointment to show cause why it should not be made permanent; this notice was not legally published. On the 3d day of January,

1933, order of sale issued on the application of the temporary guardian. On the 4th day of January, alias citation issued on the temporary appointment, setting the hearing for the 16th of January. On the 9th day of January, report of sale was made by the temporary guardian and the sale confirmed; the temporary guardian executed his deed conveying the land to A. A. Cameron on the consideration recited in the application. On the 16th day of January the court entered its order making permanent the temporary appointment of Woodson. On the 23d day of March, 1933, the court entered a second order confirming the guardian's sale to Cameron, and the guardian executed to Cameron a second deed; on that date Cameron sold the 15 acres of land to Humble Oil & Refining Company; on that day the Humble Oil & Refining Company entered into a written contract agreeing to pay $54,000 to certain parties claiming to own title to the 15 acres of land, adverse to the title of Louise Wesner. On the 20th day of April, 1933, Woodson, as guardian, filed his application in the county court alleging that Humble Oil & Refining Company had agreed to pay him as guardian $7,500 in money in lieu of the oil called for in the order confirming the sale of the land by him to Cameron, and on that day, without notice, the court entered its order permitting Woodson, as guardian, to accept the $7,500 on the terms and conditions stated in his application, but Humble Oil & Refining Company did not, at that time, pay the money under the court's order.

Jim Montgomery, a resident citizen of Arkansas, took the minor, Louise Wesner, from the orphan's home, adopted her as his daughter and changed her name legally to Jean Montgomery, and by the probate court of Arkansas on the 10th day of April, 1933, was duly appointed guardian of her estate; on the 8th day of August, 1933, he was appointed her nonresident guardian by the county court of Montgomery county. On the 12th day of December, 1933, the county court authorized Jim Montgomery, the nonresident guardian, and A. R. Woodson, the resident guardian, to receive from the Humble Oil & Refining Company $7,500 in satisfaction of the oil payments called for in the original order confirming the sale of the land by Woodson to Cameron and, under this order, the Humble Oil & Refining Company paid the $7,500 to the guardians. On the 6th day of December, 1933, Jim Montgomery, as nonresident guardian, was authorized to take possession of the $7,500 paid by the Humble Oil & Refining Company and the $500 originally paid by Cameron, and to transfer this money to Arkansas to be administered under the laws of that state; under that order the money was transferred to Arkansas. After the original sale by the temporary guardian, and prior to the second confirmation, the 15 acres became proven oil territory, and, for the titles adverse to the title of Louise Wesner, Humble Oil & Refining Company paid $54,000.

On the 25th day of July, 1935, Mrs. Pearl Floyd, a maternal aunt of Louise Wesner, on that date nine years old, filed her petition in the county court of Montgomery as next friend of the minor to review and have declared null and void all the proceedings detailed above, naming as defendants Humble Oil & Refining Company, the two guardians, and others not necessary to mention. For cause of action she alleged that the original guardianship proceedings were instituted in fraud of the rights of the minor and that Jim Montgomery, as guardian, had made himself a party to that fraud, and other allegations sufficient to make her petition good as a bill of review against the judgments and the orders of the county court of Montgomery county. On the 3d day of September, 1935, Humble Oil & Refining Company filed its plea in abatement, contesting the right of Mrs. Floyd to prosecute the bill of review as next friend of the minor. On the 3d day of September, Jim Montgomery, as guardian, filed the following answer to the bill of review.

"This respondent states that he does not give his consent to the prosecution of this action by Mrs. Pearl Floyd as next friend of Jean Montgomery, whose name at the time of adoption as stated above was Louise Wesner, but whose name was changed to Jean Montgomery at the time of her adoption by order of court, and this respondent, in the capacity of legal guardian of next friend is entitled to act for said minor petitioner in all actions involving her property and rights, in this case and in all other cases which may be necessary to institute in the Court of Texas, and if this action proceeds in this Court, your respondent avers that he is

entitled to be substituted in the place and stead of Mrs. Pearl Floyd as the acting representative of the said petitioner either as guardian or next friend as the Court shall so order and direct, and to that end this respondent appears herein in obedience to the citation issued out of this Court and by this response asserts his willingness to so act and requests the Court to so order.

"This respondent further alleges that he has no personal claims to the said land, and has no interest personally in the controversy stated in the petition, but his only interest and concern is for the welfare and best interest of the said minor petitioner.

"Wherefore, your respondent prays the Court to make any and all proper orders herein as may be necessary in order to fully protect the interests of the minor petitioner, and this respondent remains in Court to perform and carry out any proper orders which this Court may make in furtherance of the best interests of the said minor relating to the lands described in the petition."

The court made no order on Montgomery's petition and answer, but sustained the plea in abatement. Mrs. Floyd, as next friend, prosecuted her appeal to the district court of Montgomery county where the plea in abatement was again sustained.

## Opinion.

█ The only question presented by this appeal is the right of Mrs. Floyd, as next friend of the minor, Louise Wesner, to file and prosecute to judgment her bill of review; in support of her right to prosecute her bill of review as next friend, she made the following allegations: "Said Jim Montgomery is estopped to bring this Bill of Review in that he took the money paid by the Humble Oil and Refining Co. as hereafter set out, with actual knowledge of the void and fraudulent acts herein complained of. Further petitioner, by her next friend, Mrs. Pearl Floyd, and before the purported appointment of Jim Montgomery, sought to set aside the order of Court purporting to sell her land by action in certiorari in the District Court of Montgomery County No. 17765 which action Jim Montgomery had notice of and refused to join therein."

Under article 4164, R.S.1925, the guardian has the right to bring and defend suits to protect the minor's estate, but the statute is not exclusive in its application. Where the guardian is interested adversely to his ward or has committed frauds on the rights of his ward, of a nature to disqualify him to discharge his statutory duties, a "next friend" may appear in court to protect her estate. Appellees concede this point, and that the allegations of Mrs. Floyd's bill of review bring her within the exceptions to the statute, permitting her to prosecute the bill of review as next friend.

██ But Mrs. Floyd rested under the burden not only of alleging a right to prosecute a bill of review but also of sustaining that right by proof to the effect that Jim Montgomery, in participating in the ratification of the sale by Woodson and in accepting the $7,500 under orders of the probate court, was guilty of a fraud against the rights of his ward. The proof on this point is that the 15 acres of land was of great value, and that Humble Oil & Refining Company paid $54,000 for titles adverse to the title of the minor. On the hearing on the plea in abatement the Humble Oil & Refining Company offered proof of the nature of these adverse titles bought by it, and of the title of the minor also held by it. Under this proof the court could have found, if it was not compelled to find, that the minor had no title to the 15 acres of land. The proof was also to the effect that, in accepting the $7,500, Jim Montgomery, as guardian of the minor, was advised of the facts of her title. The evidence clearly raised the issue of good faith in the guardian in making the settlement with the Humble Oil & Refining Company. The guardian was a proper party to the bill of review and filed the answer against it copied above. The court had before it all necessary parties, all necessary pleadings, and heard the evidence on the issue of Mrs. Floyd's right to prosecute the bill of review; it is our conclusion that this evidence satisfactorily supported the court's judgment sustaining the plea in abatement.

The judgment of the lower court is in all things affirmed.

Affirmed.